UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLORIDA CHEMICAL SUPPLY,
INC.,

      Plaintiff,

v.                                                                    Case No: 8:21-cv-1851-CEH-AEP

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

      Defendant.

_____/

## ORDER

In this declaratory judgment action, Plaintiff Florida Chemical Supply, Inc. ("Plaintiff" or "Florida Chemical") seeks a declaration that an environmental policy of insurance issued by Defendant Westchester Surplus Lines Insurance Company ("Defendant" or "Westchester") provides coverage and a defense to Plaintiff for a chemical spill loss that allegedly resulted in personal injuries to an invitee on Plaintiff's premises. The matter is before the Court on Westchester's Renewed Motion for Final Summary Judgment (Doc. 52). In the motion, Westchester requests entry of an order finding it owes no duty to defend or indemnify to Florida Chemical for the Hughes' claim under the policy of insurance issued by Westchester to Florida Chemical. Plaintiff filed a response in opposition (Doc. 59) and Defendant replied (Doc. 62). Upon due consideration of the parties' submissions, including affidavits, stipulation of facts, memoranda of counsel and accompanying exhibits, and for the reasons that

follow, Defendant Westchester Surplus Lines Insurance Company's Renewed Motion for Final Summary Judgment is due to be granted.

## I.  BACKGROUND[1]

### A.  Stipulated Facts

This case involves an insurance coverage dispute arising out of a chemical spill that occurred on June 3, 2019, on Florida Chemical's property located at 6810 East Chelsea Street, Tampa, Florida, 33610. Doc. 58 ¶ 1. Westchester issued Florida Chemical an environmental policy no. G27886516004 for the period of August 1, 2018 to August 1, 2019 (the "Policy"). *Id.* ¶ 2; *see* Doc. 59-1.

On or about June 3, 2019, John Hughes ("Hughes"), a driver for Arc Best, entered Florida Chemical's premises to deliver chemicals. Doc. 58 ¶ 4. During an unloading activity, a barrel of chemicals fell off Arc Best's truck and became impaled by a Florida Chemical forklift, resulting in a chemical spill onto Florida Chemical's property. *Id.* Subsequent to the spill, Florida Chemical took remediation measures and submitted the expenses to Arc Best, which promptly paid all expenses. *Id.* ¶ 5.

On or about July 18, 2019, approximately six weeks after the spill, Florida Chemical received a letter of representation from a lawyer for Hughes, notifying Florida Chemical that Hughes was asserting a claim for personal injuries against

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Joint Stipulation of Agreed Material Facts (Doc. 58). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

Florida Chemical. *Id.* ¶ 6. On or about July 25, 2019, Florida Chemical submitted Hughes' claim to Westchester and requested that Westchester provide a defense and otherwise cover the claim. *Id.* ¶ 7. On September 6, 2019, Westchester denied coverage under the Policy. *Id.* ¶ 8; Doc. 59-2. Westchester denied coverage and a defense of the claim by Hughes on the basis that the claim was not timely reported to Westchester by Florida Chemical within the required thirty calendar days following the discovery of the pollution condition that occurred on June 3, 2019. Doc. 58 ¶ 8.

On August 3, 2020, Hughes sued Florida Chemical for personal injuries he allegedly incurred as a result of the incident. *Id.* ¶ 9. The lawsuit, styled *John Hughes v. Florida Chemical Supply, Inc.*, Case No.: 20-CA-006127, was filed in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida. *Id.*; *see* Doc. 62-1. On or about July 14, 2022, Florida Chemical and Hughes settled Hughes' personal injury lawsuit, with Florida Chemical agreeing to pay Hughes $47,500. Doc. 58 ¶ 10. Florida Chemical also incurred a total of $36,078.64 in attorney's fees and costs in connection with defending the Hughes' lawsuit. *Id.*

On August 2, 2021, Florida Chemical filed suit in this Court seeking a declaration that Westchester has the duty to defend and indemnify Florida Chemical for the claims asserted against it by Hughes.

## B. Insurance Policy

The Policy issued by Westchester to Florida Chemical provided, in pertinent part, as follows:

**SECTION I—COVERAGES**

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

Doc. 59-1 at 9.

    **2. Exclusions**
    This insurance does not apply to:
    . . .
    f.  Pollution
        (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
        (a) At or from any premises, site or location which is or was at any time owned or occupied by . . . any insured.

Doc. 59-1 at 10–11.

**SUDDEN AND ACCIDENTAL PREMISES POLLUTION LIABILITY ENDORSEMENT**

**I.    COVERAGES – SUDDEN AND ACCIDENTAL PREMISES POLLUTION LIABILITY**

**A. Insuring Agreement**

We will pay those sums in excess of the deductible shown in the above SCHEDULE that the insured becomes legally obligated to pay as a result of emergency response expense or for claim(s) or suit(s) seeking damages for bodily injury, property damage, or cleanup costs arising from pollution condition(s) on, at, under, or migrated beyond the boundaries of a covered location(s) provided that:

a. The pollution condition first commences during the policy period;
b. The pollution condition arises out of a short-term pollution event;

c. The pollution condition is discovered by the insured within fourteen (14) calendar days of commencement;

d. The pollution condition results in a claim or suit against the insured or emergency response expense; and

e. Such claim(s) or suit(s) or emergency response expense are reported to us in writing, within thirty (30) calendar days following the discovery of such pollution condition.

\*\*\*

## C. Defense and Claims Expense

The insurer will have the right and duty to defend the insured against any claim(s) brought in the coverage territory to which the insurance applies. The insurer shall have no duty to defend the insured against any claim to which this insurance does not apply. The insurer will pay defense and claims expense of a specific claim to which this insurance applies. Defense and claims expense reduces the applicable Limits of insurance as described in Limits of Insurance and Deductible below and is included within the deductible stated in the SCHEDULE. All duties of the insurer under this policy, including the duty to defend, end when the applicable Limits of Insurance are exhausted.

Doc. 59-1 at 36, 38; *see also* Doc. 58 ¶ 3.

## CONTRACTORS POLLUTION LIABILITY COVERAGE ENDORSEMENT—OCCURRENCE

### A. Insuring Agreement

We will pay those sums in excess of the deductible shown in the Declarations that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We shall have the right and duty to defend the Insured against any claim or suit seeking those damages. However, we shall have no duty to defend the insured against any claim or suit seeking damages for bodily injury or property damage to which this insurance does not apply . . .

This insurance applies to a loss only if:

1. The loss occurs during the policy period; and
2. The loss takes place in the coverage territory; and
3. The loss arises out of your work.

5

**B.      Exclusions**
This insurance does not apply to:
. . .

**9. Insured's Real Property**

Bodily injury or property damage arising from the insured's ownership, . . . operation, use, . . . of insured's real property.

Doc. 59-1 at 25–27.

**C.      Westchester's Motion and Florida Chemical's Response**

Florida Chemical and Westchester previously filed cross motions for summary judgment on March 3, 2022. Doc. 23, 24. Prior to briefing being completed on the motions and before any ruling by the Court, the parties requested the Court stay the case to allow the parties to engage in further settlement negotiations. Doc. 40. The Court granted the unopposed request to stay the case and multiple subsequent motions seeking to extend the stay. Docs. 41, 43, 45, 47. The parties ultimately requested the stay to be lifted, and the Court lifted the stay on February 1, 2023. Doc. 49, 50. Westchester renewed its motion for summary judgement, which is now before the Court.[2] Doc. 52.

---

[2] Florida Chemical did not renew its motion for summary judgment, but in its response to Westchester's motion, it requests summary judgment in its favor and a declaration that coverage exists. Doc. 59 at 3. In reply, Westchester contends this belated request for summary judgment incorporated into Florida Chemical's response is untimely and improper. Doc. 62 at 8. The Court agrees. Even if the Court were inclined to find Florida Chemical's motion to be timely and proper, the motion would nevertheless still fail given the Court's conclusion that no coverage exists under the Policy and that Westchester is entitled to summary judgment.

In its motion, Westchester argues that the plain language of the policy excludes coverage under the "Pollution Exclusion." However, Plaintiff purchased a "Sudden and Accidental Premises Pollution Liability Endorsement" (which Defendant refers to as the "Pollution Buy-Back Endorsement"), that provides limited pollution coverage under certain specific criteria. Among other things, one requirement under the "Pollution Buy-Back Endorsement" is where a claim results from the pollution incident, such claim must be reported in writing within 30 calendar days of discovery of the pollution condition. Because Florida Chemical did not report the claim until 52 days after the pollution incident, no coverage or duty to defend arises under the Policy. Westchester submits that the 30-day reporting requirement is an essential element of the Pollution Buy-Back Endorsement, and thus whether or not Westchester was prejudiced by the late reporting is irrelevant because the reporting requirement is a necessary event to trigger coverage in the first instance. Finally, Westchester argues that even though Florida Chemical did not receive notice of the claim from Hughes until after the 30 days, that does not create an ambiguity in the policy which requires reporting within 30 days of notice of the pollution incident, not within 30 days of receiving notice of a claim. Westchester attaches to its motion a copy of the lawsuit Florida Chemical filed against its insurance agent in which Florida Chemical alleges that the agent was negligent in procuring insurance that failed to provide sufficient coverage for the claim by Hughes. *See* Doc. 52-1 ¶¶ 22, 23.

In response to Westchester's Motion for Summary Judgment, Florida Chemical argues that it paid premiums for a liability policy that covered damages resulting from

pollution conditions, including chemical spills. Florida Chemical immediately reported the Hughes' claim to Westchester as soon as it learned of Hughes' potential personal injury claim. Because Florida Chemical did not receive notice of the Hughes' claim until more than thirty days after the spill, Florida Chemical submits it could not have provided Westchester with notice of Hughes' claim within thirty days. Once it did learn of Hughes' claim, Florida Chemical notified Westchester within seven days, and thus, Florida Chemical argues there can be no prejudice to Westchester. Florida Chemical contends that the occurrence-based Policy provides coverage under its plain terms. Alternatively, Plaintiff submits that the "Pollution Buy-Back Endorsement" provides coverage as the "discovery" and reporting requirements of the provision are ambiguous and must be construed in favor of coverage. Doc. 59.

In support of its claim that coverage exists, Florida Chemical submits the affidavit of Marc Maseman, President and CEO of Florida Chemical, who states that prior to receiving Hughes' claim, Florida Chemical had no notice or reason to believe any person would be making a claim arising out of the spill. Doc. 59-3 ¶ 7. He further attests that Westchester conducted no investigation related to the spill, but if it had, it would have determined that it suffered no prejudice from the purported delay in notice. *Id.* ¶¶ 9, 15. Additionally, Florida Chemical provides a supplemental affidavit of Maseman stating that his understanding was Florida Chemical purchased occurrence coverage, not thirty-day "claims made" coverage. Doc. 59-4 ¶ 6. Maseman also states that the accident was caused by Arc Best's employee Hughes who dropped chemicals off the back of his semi-truck creating a minor spill. *Id.* ¶ 3. Lastly, Florida Chemical

proffers the affidavit of Larry Knight, president of Aaxia Chemical Insurance Services, who opines that this Policy is an occurrence policy and there is no policy language to help identify the thirty-day reporting time element as claims made coverage. Doc. 59-5 ¶¶ 18, 19.

In its reply, Westchester responds that the 30-day reporting requirement is not ambiguous—that was the coverage Plaintiff purchased. Doc. 62. To expand coverage for claims made beyond the 30-day reporting period, Westchester contends, would result in the Court rewriting the Policy. As for Plaintiff's claim that there was no prejudice, Westchester argues that whether it was prejudiced is irrelevant where no coverage exists. In response to Plaintiff's claim that coverage exists under the Policy, Westchester argues that based on the allegations of the underlying Hughes' complaint, there was no duty to defend or indemnify because the allegations fall squarely within the "Insured's Real Property" exclusion. This exclusion precludes coverage for bodily injury resulting from the insured's use of its property. Hughes alleged his bodily injury (inhaled chemical fumes) resulted from an employee's negligent operation of a forklift that resulted in piercing the container of hydrofluoric acid. Additionally, Westchester argues this theory of recovery under the Contractors Pollution Liability Endorsement ("CPL Endorsement") was not raised in the Complaint and thus Plaintiff is barred from asserting it now.  Regarding Plaintiff's affidavits offered to support its claim that the Policy is ambiguous, Westchester submits that the affidavits are irrelevant parole evidence that should be disregarded.

## II.    LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by

relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

**B. Applicable Law**

A federal court sitting in diversity must apply both the substantive law of the forum, as well as the conflict-of-law rules of the forum state. *LaFarge Corp. v. Travelers Indemnity Co.*, 118 F.3d 1511, 1515 (11th Cir.1997). "Florida follows the rule of *lex loci contractus* – that is, Florida courts apply the law of the jurisdiction in which the contract was entered into." *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1218 (11th Cir. 2011). "That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)). The Westchester Surplus Lines Insurance policy was issued to Florida Chemical in Florida. The parties provide no further evidence that the insurance contract was entered into in another jurisdiction. In the motion and response, both parties cite to and rely on Florida law for the interpretation of the policy and the determination of the issues before the court. Docs. 52, 59. The Court agrees that Florida law governs this dispute.

**III.  DISCUSSION**

Westchester is entitled to summary judgment because, applying the plain language of the Policy, Westchester does not owe a duty under the Policy to Florida

Chemical to defend or indemnify it for the Hughes' claim. The Policy's Pollution Exclusion bars coverage,[3] and coverage is not otherwise reinstated under the "Sudden and Accidental Premises Pollution Liability Endorsement" because Florida Chemical's claim was untimely. "Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). An undefined term in an insurance policy should be given its plain and ordinary meaning. *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017). Ambiguity exists where "the relevant policy language is susceptible to more than one reasonable interpretation." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). Ambiguity is not present just because the contract is complex, and analysis is required to interpret the policy. *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 291 (Fla. 2007). "The mere fact that a provision in an insurance policy could be more clearly drafted does not necessarily mean that the provision is otherwise inconsistent, uncertain or ambiguous." *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986).

> **a. The plain meaning of the Sudden and Accidental Premises Pollution Liability Endorsement is not ambiguous or illusory and therefore Westchester owed no duty to defend or indemnify Florida Chemical under the Policy.**

---

[3] Pollution exclusions in comprehensive general liability (CGL) policies have been routinely upheld by Florida courts. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998) (finding the pollution exclusion clause is clear and unambiguous so as to preclude coverage for pollution related liability).

Florida Chemical argues the Sudden and Accidental Premises Pollution Liability Endorsement is ambiguous and should be construed in favor of coverage because there was no way that it could have reported the claim to Westchester in the thirty-day reporting period when it did not learn of Hughes' claim until after the thirty days. Florida courts have found that pollution buyback provisions must be enforced as written. *Composite Structures, Inc. v. Cont'l Ins. Co.*, 903 F. Supp. 2d 1284, 1290 (M.D. Fla. 2012), *aff'd*, 560 F. App'x 861 (11th Cir. 2014) (citing *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658–60 (5th Cir. 1999); *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal. App. 4th 750, 96 Cal. Rptr. 3d 409, 416–17 (2009)). The Pollution Buy-Back Endorsement provides that Westchester is obligated to pay for a claim for personal injuries arising from a pollution condition provided the following criteria are met: (a) The pollution condition first commences during the policy period; (b) The pollution condition arises out of a short-term pollution event; (c) The pollution condition is discovered by the insured within fourteen (14) calendar days of commencement; (d) The pollution condition results in a claim against the insured; and (e) Such claim is reported to Westchester, in writing, within thirty (30) calendar days following the discovery of such pollution condition. It is undisputed the incident occurred during the relevant policy period, it arose out of a short-term pollution event (chemical spill), it was discovered immediately the day it happened, and it resulted in a claim by Hughes. However, the final requirement that the claim be made to

13

Westchester within thirty days of Florida Chemical's discovery of the pollution condition was not met.[4] Thus, coverage under the Endorsement was not triggered.

Florida Chemical argues that even though the claim was reported more than thirty days after the incident, there was no prejudice to Westchester that resulted from the claim being submitted after the thirty days. However, when these exclusions require "timely reporting to trigger coverage," it has been held that a showing of prejudice is irrelevant. *Composite Structures*, 903 F. Supp. 2d at 1290; *see also Matador Petroleum*, 174 F.3d at 658–60 (holding that the plain language of a pollution buy-back is enforceable when it requires timely notice as a condition of coverage).

This case is factually similar to *Composite Structures* in which that court noted that a pollution buyback exclusion that required an "occurrence" be reported within thirty days to the insurer was enforceable under the plain language of the policy. *Composite Structures*, 903 F. Supp. 2d at 1287. There, a pollution event caused injuries that would have normally fallen under the policy. *Id.* at 1286. The policy required that the "occurrence" must be "reported in writing . . . within thirty (30) days after having become known to the insured." *Id.* at 1287. The court found that the reporting

---

[4] Florida Chemical's affidavit of its CEO stating that his understanding was Florida Chemical purchased occurrence coverage, not thirty-day "claims made" coverage, does not salvage its cause. *See Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co., Ltd.*, 254 F.3d 987, 1003 (11th Cir. 2001) (where a policy is unambiguous, "a court may not look to parole evidence"); *see also Deni Assocs. of Fla.*, 711 So. 2d at 1140 (declining to adopt or apply the doctrine of reasonable expectations to interpretation of CGL policies).

requirement was a necessary condition for coverage, and if that condition was not met, a showing of prejudice was irrelevant. *Id.* at 1289–90. Because the plaintiff failed to show that the insurer was given written notice within 30 days, the court concluded there was no duty to defend and indemnify under the policy. *Id.*

While the policy in *Composite Structures* required that notice be given within 30 days of the occurrence, the policy at issue here requires that a pollution condition be "discovered" within 14 days and that any claim resulting from that pollution condition be reported within 30 days of the discovery of the pollution condition. A "pollution condition" is defined in the Policy as "the discharge, dispersal, release, escape, migration, seepage, or illicit abandonment" of chemicals or hazardous materials. Doc. 1, Ex. A at 41. There is no dispute the spill here constituted a "pollution condition." And it is undisputed that Plaintiff knew of the incident nearly immediately after the barrel was pierced by the forklift. Doc. 58 ¶ 4. Like the policy in *Composite Structures*, the notice requirement here is a necessary condition to trigger coverage. Therefore, if no claim is reported within the 30-day window of time, there can be no coverage.

Florida Chemical contends that discovery occurred when the suit was brought against it by Hughes, not when Florida Chemical became aware of the spill. Doc. 59 at 16. Although discovery is not defined in the Policy, this does not immediately signify ambiguity. Interpreting the policy as the Plaintiff argues would go against the plain language of the policy. The policy clearly states that the thirty-day window begins when the "pollution condition" is discovered, not when a "claim or suit" is made as a result of that condition. Florida Chemical was aware of the condition on the day that

15

it occurred; accordingly, on that date, the thirty-day clock began to run. Plaintiff acknowledges it did not report the Hughes' claim within this thirty-day period. Doc. 58 ¶ 6-7. Because no "claim or suit" was reported within thirty days of discovery of the pollution condition, no coverage exists and no duty to defend arises under the Policy.

While the coverage offered by the Pollution Buy-Back Endorsement is narrow, it is not illusory as Florida Chemical contends. The Endorsement provides a limited exception to the Policy's broad exclusion against pollution. This exception provides coverage for those claims presented within the first thirty days of discovery of the pollution condition.

Florida Chemical argues it could not have presented the claim earlier because it did not know about it within the first thirty days. Once a pollution condition is known, presumably an insured is expected to investigate any potential claims arising from the condition. Indeed, Westchester suggests Florida Chemical may have known of the Hughes' claim earlier, noting that Florida Chemical took witness statements, including that of John Hughes, on June 3, 2019, the date the spill occurred. To the extent a dispute exists as to when Florida Chemical knew of Hughes' claim, such factual dispute is immaterial to the issues before the Court. On the instant motion, the Court views the facts in the light most favorable to the non-moving party, Florida Chemical. Thus, even accepting that Florida Chemical was unaware of Hughes' potential claim until it was contacted by Hughes' attorney, the relevant fact is that Florida Chemical knew of the pollution condition, and there is no dispute as to that date or the fact that

the Hughes' claim was not presented to Westchester within 30 days of that date. Because Florida Chemical did not timely present the Hughes' claim to Westchester, coverage was not triggered under the Sudden and Accidental Premises Pollution Liability Endorsement.

### b. No coverage exists under the Contractors Pollution Liability Endorsement.

In opposition to Westchester's motion, Florida Chemical alternatively argues that the Contractors Pollution Liability ("CPL") Endorsement provides for a defense and indemnification of the Hughes' claim. Westchester argues that because Florida Chemical never raised the CPL Endorsement as a basis for liability in its Complaint, Florida Chemical is barred from raising this theory of liability at this juncture in the proceedings. In general, "[i]t is improper to assert, in a brief opposing summary judgment, a new theory of liability based on unpled factual predicates in support of an already pled claim." *Shine v. Univ. of Alabama - Birmingham*, No. 22-10333, 2023 WL 1099766, at *3 (11th Cir. Jan. 30, 2023) (citing *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017)). The Eleventh Circuit has recognized that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Dukes*, 852 F.3d at 1046 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Review of Plaintiff's Complaint reveals that although Plaintiff mentions contractors pollution liability coverage in its Complaint, *see* Doc. 1 ¶ 9, the "relevant parts" of the Policy relied upon by Florida Chemical for its claims pertain solely to the "Sudden and

17

Accidental Premises Pollution Liability" Endorsement. *See* Doc. 1 at 3–5, ¶ 10. The Complaint does not cite to, seek recovery under, or request a declaration regarding the CPL portion of the Policy. *See* Doc. 1 at 6–14. Of note, Florida Chemical never even raised the CPL Endorsement as a basis for liability in its previously filed motion for summary judgment.

Even if the Court were inclined to consider the CPL Endorsement, this provision of the Policy does not give rise to the duty to defend or indemnify under the facts of this case. Florida Chemical argues coverage exists under the plain language of the Contractors Pollution Liability Endorsement which states that Westchester would pay those sums that the Insured became legally obligated to pay for bodily injury or property damage arising out of a loss. Doc. 59 at 9-13. Coverage applies to a loss that: (1) takes place during the policy period, (2) within the coverage territory, and (3) arising out of Florida Chemical's work. *See* Doc. 1-1 at 25.

Under the real-property exclusion of the endorsement, however, any bodily injury arising from the "ownership," "operation," or "use" of the insured's real property does not fall under the policy. Doc. 1, Ex. A at 27. The Hughes' Complaint alleged that Florida Chemical conducted business at 6810 E. Chelsea Street, Tampa. Doc. 62-1 ¶ 3. On June 3, 2019, Hughes was delivering a shipment of hydrofluoric acid to Florida Chemical's address at 6810 E. Chelsea Street, Tampa. Doc. *Id.* ¶ 4. At that time and place, a Florida Chemical's employee negligently operated a forklift puncturing one or more containers of hydrofluoric acid resulting in a chemical cloud that was involuntarily inhaled by Hughes. *Id.* ¶¶ 5, 6.

Westchester's duty to defend Florida Chemical for the Hughes' loss is determined by the allegations in the Hughes' Complaint. Under Florida law, a liability insurance company has no duty to defend a suit where the complaint upon its face alleges a state of facts which fails to bring the case within the coverage of the policy. *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 535 (Fla. 1977), *opinion adopted sub nom. Nat'l Union Fire Ins. Co. v. Lenox Liquors*, 360 So. 2d 122 (Fla. 3d DCA 1978). Hughes alleged a Florida Chemical employee negligently pierced the container of chemicals as it was being unloaded on Florida Chemical's premises. Thus, the alleged injury arose from the ownership, operation, or use of Florida Chemical's real property. Based on the allegations of the Hughes' Complaint, the real-property exclusion bars coverage and no duty to defend arises under the Policy.

As the duty to defend is broader than the duty to indemnify, if a court determines there is no duty to defend, as a matter of law there cannot be a duty to indemnify. *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009) ("[T]he duty to indemnify is narrower than the duty to defend and thus cannot exist if there is no duty to defend.").

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     Defendant's Renewed Motion for Final Summary Judgment (Doc. 52) is **GRANTED**.

2.     As a matter of law, Defendant Westchester Surplus Lines Insurance Company has no duty to defend or indemnify Plaintiff Florida Chemical Supply, Inc.

for the claims asserted by John Hughes against Florida Chemical in the lawsuit styled

*John Hughes v. Florida Chemical Supply, Inc.*, Case No.: 20-CA-006127 in the Thirteenth

Judicial Circuit Court in and for Hillsborough County, Florida.

      3.     The Clerk is directed to terminate all pending motions and deadlines.  A

Declaratory Judgment will be entered by separate Order of the Court.

      **DONE AND ORDERED** in Tampa, Florida on December 4, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of record
Unrepresented parties, if any

20